IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOOKER T. TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 11 CV 6083 |
| | ) | |
| STEVEN TALMONTAS, and | ) | Judge John Z. Lee |
| KEVIN JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Booker T. Terry has sued Steven Talmontas, a sergeant with the Will County Sheriff's Office, and Kevin Johnson, a police investigator with the Frankfort Police Department (collectively "Defendants"), alleging that Defendants misstated and omitted material facts in obtaining an arrest warrant against him for alleged battery of a foster child, Matriana. The arrest warrant was issued, and Plaintiff was arrested, indicted, and held for nearly two years in prison awaiting trial before the State's Attorney dropped the charges, concluding there was inadequate evidence to support them.

Plaintiff brings claims under 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment violations and under Illinois law for malicious prosecution. Defendants have moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims are time barred, probable cause existed for his arrest, Defendants are entitled to qualified immunity, and Plaintiff has failed to allege Defendants acted with the malice necessary to support a malicious prosecution claim. For the reasons stated herein, the Court grants Defendants' motion to dismiss Plaintiff's Fourteenth Amendment procedural due process claim

1

and denies Defendants' motion to dismiss Plaintiff's Fourth Amendment and malicious prosecution claims.

**Facts**

The following facts are taken from Plaintiff's Second Amended Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

On August 13, 2009, Plaintiff Terry was at the residence of his then estranged wife, Sherri Terry, at 1174 Cherry Lane, Beecher, Illinois. (2nd Am. Compl. ¶ 19.) Sherri Terry was a foster parent to three children – Matriana, 8, Matthew, 7, and Sean, 10. (*Id.*)

In the early morning hours of August 14, Plaintiff and Sherri Terry called 911 because Matriana, who had high-functioning autism and a history of seizures, was lying unresponsive in her bed and appeared to be having a seizure. (*Id.* ¶¶ 3, 20.) The paramedics arrived and found Matriana in her bed, unresponsive, but with no visible injuries. (*Id.*) The paramedics did not report seeing anything else out of the ordinary in the house. (*Id.*)

The paramedics asked Plaintiff to carry Matriana down to the ambulance waiting outside, and the paramedics transported her to St. James Hospital in Chicago Heights, Illinois, and later to Hope Children's Hospital in Oak Lawn, Illinois. (*Id.* ¶ 22.) Matriana was examined by doctors and was found to have suffered a subdural hematoma (serious bleeding in the brain). (*Id.* ¶ 23.) Further examination revealed small bruises on her buttocks and upper arm, a scraped knee, and a small scratch on her arm. (*Id.* ¶ 29.) No other trauma was documented. (*Id.*)

The Will County Sherriff's Office Major Crimes Task Force was enlisted to assist the Beecher and Frankfort police departments investigate the matter. (*Id.* ¶ 24.) Corporal Jeffrey Dopke of the Beecher Police Department was the head detective assigned to investigate. (*Id.*

¶ 25.)  Defendant Johnson, a police investigator with the Frankfort Police Department, and Defendant Talmontas, a sergeant with the Will County Sheriff's Department, were called in to assist in the investigation.  (*Id.* ¶¶ 13, 14, 24.)

On August 15, 2009, Dr. Christian Denouden, one of Matriana's treating physicians, told Corporal Dopke that he believed Matriana's head injury was not caused by a "casual fall," but was caused by her hitting something or someone hitting her.  (*Id.* ¶¶ 26-27.)  Corporal Dopke also learned from Matriana's biological father that she had a history of seizures.  (*Id.* ¶ 28.)

On August 17, 2009, Defendant Johnson interviewed a nurse, Sylvester Young, who sometimes watched Sherri Terry's foster children while she was at work.  (*Id.* ¶¶ 30-31.)  Young first reported that on the night of August 13, 2009, he was in the house with the three foster children and Plaintiff and that he was the one who called 911 that night.  (*Id.* ¶ 31.)  Young claimed that around midnight he heard a thump and saw Plaintiff running into a bedroom.  (*Id.*) He claimed that he went to see what was going on and found Matriana unresponsive.  (*Id.*)  Upon further questioning by Defendant Johnson, however, Young recanted his original story and admitted he had lied.  (*Id.* ¶ 32.)  He then claimed that he had actually left the Terry residence around 11:00 p.m. on the evening of August 13, and that Plaintiff was the only adult in the house when he left.  (*Id.*)

Also on August 17, 2009, Defendant Talmontas and Corporal Dopke assisted in interviews of foster children Matthew and Sean.  (*Id.* ¶ 33.)  The interviews were led by a children's counselor and were videotaped.  (*Id.*)  Matthew claimed Plaintiff hit Matriana a few days earlier, but when asked for details Matthew first said she was struck in the afternoon while she was upstairs and he was in the kitchen; he then changed his account and said it was at night while he was asleep and Matriana was in her own bedroom; then, he said it was while he was in

3

his room asleep and Matriana was downstairs. (*Id.*) Sean stated that no one in the house, including Plaintiff, had hit him, Matthew or Matriana, and that if any of the children were ever disciplined, their only punishment was being placed in time-out. (*Id.* ¶ 36.) Sean insisted that neither he nor any of the other foster children were subjected to physical abuse, despite multiple attempts by the counselor to get him to say otherwise in a period lasting over fifteen minutes. (*Id.* ¶ 37.)

On August 18, 2009, Defendants Talmontas and Johnson met with Assistant State's Attorney ("ASA") Ken Chudwin to seek an arrest warrant for Plaintiff. (*Id.* ¶ 39.) Defendants did not disclose to Chudwin that foster child Sean stated that he had not been struck by Plaintiff and also had not observed or heard foster children Matriana or Matthew being struck by Plaintiff. (*Id.* ¶ 40.) Defendants also did not disclose the inconsistencies and contradictions in Matthew's statements. (*Id.* ¶ 41.) Chudwin approved the requested charges and accompanied Defendants to Will County Court to obtain an arrest warrant for Plaintiff. (*Id.* ¶ 46.) That same day, Judge Daniel Rozak granted the arrest warrant, and on August 31, 2009, Plaintiff was arrested pursuant to the warrant. (*Id.* ¶¶ 46-47.)

On September 23, 2009, a grand jury was convened in Will County. (*Id.* ¶ 48.) Corporal Dopke was the only witness. (*Id.* ¶ 49.) Dopke testified that foster child Matthew heard Plaintiff beat Matriana, heard a thump on the floor and heard her crying, but did not disclose that Matthew had given at least three versions of the alleged abuse. (*Id.* ¶ 51.) Dopke also did not mention the interview with foster child Sean. (*Id.* ¶ 50.) The grand jury indicted Plaintiff. (*Id.*)

On June 6, 2011, the State's Attorney moved to *nolle prosequi* the charges against Plaintiff, meaning that the State no longer would prosecute its case against Plaintiff. (*Id.* ¶ 55.) In its motion to the court, the State's Attorney stated that Sylveter Young had changed his story

again and had admitted that he committed fraud against the state relating to this matter. (*Id.*)
The State's Attorney concluded that "the People believe the recent statements of Sylvester
Young in conjunction with the young age and expected testimony of Matthew Hightower (the
victim's brother) could not sustain our burden of proof." (*Id.*) The Court granted the State's
Attorney's motion and terminated the case against Plaintiff. (*Id.* ¶ 56.)

From September 23, 2009 until June 6, 2011, Plaintiff was held in prison. (*Id.* ¶ 55.)
During that time he was never tried or convicted of the charges brought against him, and he
never pleaded guilty to any charges. (*Id.* ¶ 54.) He maintained his innocence at all times. (*Id.*)

According to public court documents, which the Court may consider at the motion to
dismiss stage without converting a motion to dismiss into a motion for summary judgment, *see*
*Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), on August 31, 2011, Plaintiff
filed a complaint against the Beecher Police Department and the Will County Task Force and
Detention Center. On April 5, 2012, Plaintiff filed an amended complaint naming Defendants
Talmontas and Johnson and dismissing the Beecher Police Department and Will County Task
Force and Detention Center. On June 22, 2012, Plaintiff filed a second amended complaint
adding a malicious prosecution claim.

Defendants now move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6).

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v.*
*Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards,
"a plaintiff's complaint need only provide a short and plain statement of the claim showing that
the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim
and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations

omitted); *see also* Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Id.*

However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

### I.    Statute of Limitations

Defendants argue that Plaintiff's § 1983 claims for false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments should be dismissed because they were not timely filed. (Defs. Mot. Dismiss 5.) It is unusual to dismiss a claim as time-barred under Rule 12(b)(6) because the statute of limitations is an affirmative defense that a complaint need not anticipate or overcome. *See* Fed. R. Civ. P. 8(c); *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Still, a plaintiff can "effectively plead[] herself out of court by alleging facts that are sufficient to establish the defense." *Hollander*, 457 F.3d at 691.

To determine the applicable statute of limitations period for § 1983 claims, federal courts look to the law of the state in which the cause of action arose. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Illinois, the period for § 1983 claims of false arrest and false imprisonment is two years, the same as the period for personal injury torts. *Id.* (citing 735 Ill. Comp. Stat. 5/13-202); *Jenkins v. Village of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007); *Kelly v. City of*

6

*Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) ("Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a section 1983 case.")

Although state law determines the length of the statue of limitations period, federal law determines the date the statute of limitations period begins to run. *See Wallace*, 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original). Generally, "the statute of limitations upon a section 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397.

Here, Plaintiff was arrested on August 31, 2009. (2nd Am. Compl. ¶ 47.) He was brought before a magistrate for arraignment and indicted by a grand jury on September 23, 2009. (*Id.* ¶¶ 47-53.) On August 31, 2011, Plaintiff filed a complaint against the Beecher Police Department and the Will County Task Force and Detention Center. On April 5, 2012, he filed an amended complaint substituting Defendants Johnson and Talmontas for the Beecher Police Department and the Will County Task Force and Detention Center. Thus, at first glance, Plaintiff's complaint against Johnson and Talmontas, filed more than two years after he was arraigned and indicted by the grand jury, appears to be untimely. Plaintiff, however, contends that the statute of limitations should be equitably tolled.

Where, as here, federal cases adopt the statute of limitations from state law, tolling doctrines, which stop the statute of limitations from running even if the accrual date has passed, are governed by state law. *See Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001) ("the state, rather than the federal, doctrines of equitable tolling governs cases of borrowing"). Under Illinois law, equitable tolling may be invoked to suspend the running of the

7

statute of limitations when (1) a defendant has actively misled the plaintiff; (2) extraordinary circumstances have prevented the plaintiff from asserting his rights; or (3) the plaintiff timely but mistakenly asserted his rights in the wrong forum. *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000).

Defendants argue that equitable tolling should not apply because Plaintiff has pleaded allegations that "fall far short of actively misleading the plaintiff 'in some extraordinary way' or preventing Plaintiff from asserting his rights" and "[t]he failure to plead those facts should be treated as a waiver." (Defs.' Reply 4.) The Court disagrees. As stated, a statute of limitations defense is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Where a defendant invokes an affirmative defense, "[a] complaint states a claim on which relief may be granted whether or not some defense is potentially available. This is why complaints need not anticipate and attempt to plead around defenses." *U.S. v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Accordingly, it is not necessary for Plaintiff to have pleaded that Defendants actively misled him in some extraordinary way or prevented him from asserting his rights. *See id.*; *Hollander*, 457 F.3d at 691 n.1 ("a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."); *Xechem, Inc. v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission.") (emphasis in original). Only if a plaintiff pleads himself out of court by alleging facts that establish the defense can a motion to dismiss dispose of a complaint on statute of limitations grounds. *Hollander*, 457 F.3d at 691. Otherwise, resolving this defense comes after the pleading stage. *N. Trust Co*, 372 F.3d at 888.

Plaintiff has not pleaded himself out of court by alleging that Defendants never misled him or never prevented him from asserting his rights. On the contrary, Plaintiff's primary allegation is that Defendants intentionally or recklessly misstated and withheld material

information in order to make it appear there was probable cause for an arrest warrant against him. (2nd Am. Compl. ¶ 60.) Therefore, Plaintiff's complaint cannot be dismissed at this stage on statute of limitations grounds. *See Ollins v. O'Brien*, 2006 WL 1519286, at *2-3 (N.D. Ill. May 26, 2006) (holding that Plaintiff's allegations that defendant officers fabricated witness statements precluded dismissal because the court "could conceive of a set of facts upon which equitable tolling could apply to plaintiffs' false arrest claims"); *Bell v. Woleck*, 2002 WL 10473, at *2 (N.D. Ill. Jan. 2, 2002) (same). If, after discovery, Defendants put forth evidence establishing that Plaintiff was not misled or prevented from asserting his rights, then the Court can evaluate whether Plaintiff's invocation of equitable tolling can survive. Under the federal notice pleading standards, however, Plaintiff has not pleaded himself out of court on statute of limitations grounds.[1]

## II.     Qualified Immunity for Fourth Amendment Claims

Defendants also argue that they are entitled to qualified immunity on Plaintiff's Fourth Amendment claims of false arrest and false imprisonment because they had, at the very least, arguable probable cause to seek an arrest warrant for Plaintiff on August 18, 2009, when they obtained the warrant from Judge Rozak. (Defs.' Mem. Supp. Mot. Dismiss 10.) As a general matter, qualified immunity can shield public officials such as Defendants from civil suit if the officials can demonstrate that they were performing a discretionary function and that a reasonable law enforcement officer would have believed the action to be lawful. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 237 (2009); *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2009). When evaluating a claim of qualified immunity, the Court must ask whether "the facts that a plaintiff has alleged . . . make out a violation of a

---

[1] Because equitable tolling saves Plaintiff's complaint from being dismissed at this point in the proceedings, the Court does not address Plaintiff's arguments that the federal discovery rule applies to his claims.

constitutional right," and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Van den Bosch v. Raemisch*, 658 F.3d 778, 786 (7th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). The court has discretion in deciding which of the two prongs to address first. *Id.*

At the Rule 12(b)(6) stage of the proceedings, Plaintiff is required only to allege – not prove – the deprivation of a constitutional right. *See Tamayo*, 526 F.3d at1090. Plaintiff has alleged that Defendants violated his Fourth and Fourteenth Amendment rights by seeking and obtaining an arrest warrant through the intentional or reckless misstatement and withholding of material facts and that, as a result, Plaintiff was arrested and detained for nearly two years without probable cause. (2nd Am. Compl. ¶ 60.) This satisfies the federal notice pleadings standards. *See* Fed. R. Civ. P. 8; *Ashcroft*, 556 U.S. at 678; *Bell Atlantic*, 550 U.S. at 570. The pleading standard is no different simply because qualified immunity may be raised as an affirmative defense. *See Tamayo*, 526 F.3d at1090. Consequently, the Seventh Circuit has cautioned that, although qualified immunity must be resolved at the earliest possible stage, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1998), this rule must be tempered by the notice pleading requirements of Rule 8. *See Jacobs v. City of Chi.*, 215 F.3d 758, 775 (7th Cir. 2000) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal . . . and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint") (Easterbrook, J. concurring); *see also Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.") (internal quotations and citations omitted)

Here, the right to be free from arrest without probable cause is clearly established. As discussed, taking all the facts pleaded in Plaintiff's complaint as true, whether Defendants had probable cause, or even arguable probable cause, when they obtained an arrest warrant for Plaintiff is a question that cannot be resolved by the Court at this point in the proceedings, as discussed in greater detail below. Therefore, a grant of qualified immunity is inappropriate at this time.

### III.   Probable Cause for Fourth Amendment Claims

Defendants argue that Plaintiff's § 1983 claims for false arrest and false imprisonment should be dismissed because Plaintiff's second amended complaint establishes that probable cause existed for Plaintiff's arrest. (Defs.' Mem. Supp. Mot. Dismiss 9.) "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). Police officers have probable cause to arrest when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Id.* (citing *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). If there is "room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the jury must determine the existence of probable cause. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013-14 (7th Cir. 2006) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Only if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists. *Maxwell*, 998 F.2d at 434.

Defendants argue that Plaintiff's second amended complaint establishes that Defendants had probable cause because "Defendants could rely upon the victim's brother Matthew, who

stated that Plaintiff had struck Matriana" and "Dr. Christian Denouden corroborated Matthew's description of events when he advised Corporal Dopke on August 15, 2009 that Matriana's head injury was not caused by a casual fall, but rather, by hitting something or something hitting her." (Defs.' Mem. Supp. Mot. Dismiss 9.) Defendants also contend that Sylvester Young's assertion that Plaintiff was the only adult at the house when he left at 11:00 p.m., two hours before Matriana was found unresponsive in her bed, "provided probable cause to support Plaintiff's arrest for battery," and the fact that Young initially lied to police "did not undercut his assertion." (*Id.* 10.)

But whether Matthew and Young provided Defendants with "reasonably trustworthy information . . . sufficient to warrant a prudent person in believing that the suspect had committed" an offense, *Mustafa*, 442 F.3d at 547, is a factual issue that requires discovery. According to Plaintiff's complaint, which must be accepted as true in a motion to dismiss, in his interview with Defendant Talmontas and Corporal Dopke, Matthew changed his story about Plaintiff hitting Matriana multiple times. (Second Am. Compl. ¶ 34.) First, Matthew claimed Plaintiff hit Matriana in the afternoon while she was upstairs and Matthew was in the kitchen; he then said it was at night while he was asleep and Matriana was in her own bedroom; then, he said it was while he was in his room asleep and Matriana was downstairs. (*Id.*) Additionally, Young admitted that he lied to Defendant Johnson when he told Johnson that he was at the house the night of the incident, heard a thump around midnight, saw Plaintiff run into a bedroom, found Matriana unresponsive, and called 911. (*Id.* ¶ 31.) Upon further questioning by Johnson, Young recanted his original story and told Johnson that he left the house at 11 p.m. and that when he left Plaintiff was the only adult in the house. (*Id.* ¶ 32.)

Moreover, Plaintiff alleges that Defendants ignored foster child Sean's statement by not presenting it to ASA Chudwin, Judge Rozak, or the grand jury. (*Id.* ¶¶ 40-51.) Sean told investigators that no one in the house, including Plaintiff, had hit him, Matthew or Matriana, and that if any of the children were disciplined, their only punishment was being placed in time-out. (*Id.* ¶ 36.) Sean insisted that neither he nor any of the other foster children were subjected to physical abuse, despite multiple attempts by the counselor to get him to say otherwise in a period lasting over fifteen minutes. (*Id.* ¶ 37.)

Whether Matthew's inconsistent and wavering claims, Young's admitted lies, and Sean's insistent denials of abuse, all which must be accepted as true at this preliminary stage, created "room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," *Sornberger*, 434 F.3d at 1013-14, or negated probable cause are factual issues requiring further proceedings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *U.S. v. Marzook*, 426 F. Supp. 2d 820, 827 (N.D. Ill. 2006) ("[Defendant's] credibility attack on individual A is not a matter appropriately resolved on a motion to dismiss. The credibility of a witness is left for the trier of fact.") (citing *U.S. v. Van Whye*, 965 F.2d 528, 531 (7th Cir. 1992)); *Denten v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 887 F. Supp. 176, 179 (N.D. Ill. 1995) (denying motion to dismiss because defendant's argument "raises factual disputes and credibility issues which are proper before a fact-finder, not within the scope of a motion to dismiss.") Thus, Defendants' arguments about the appropriate weight that should be given to statements by various witnesses, whether Young, Matthew, or Sean, are not appropriate because a motion to dismiss tests the sufficiency of the complaint, not its merits. *See Christensen*, 483 F.3d at 457-58 (explaining that district

court's suspicion that plaintiff's claim lacks merit is not a legitimate grounds for dismissal); *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) (same). Accordingly, dismissal of Plaintiff's § 1983 claims for false arrest and false imprisonment is inappropriate at this stage of the proceedings.

## IV.    State Law Malicious Prosecution

Defendants also argue that Plaintiff fails to state a malicious prosecution claim because Plaintiff has not sufficiently pleaded the absence of probable cause or that Defendants acted with malice. Under Illinois law, to establish a malicious prosecution action, a plaintiff must allege facts showing: (1) the defendant commenced or continued an original criminal proceeding; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). As discussed, whether Defendants acted with probable cause is a fact-based inquiry not properly resolved at this stage in the proceedings. Thus, Plaintiff's malicious prosecution claim cannot be dismissed based on the absence of probable cause.

Turning to whether Defendants acted with malice, the Court also finds that dismissal is inappropriate on this ground as well. Under Illinois law, "malice, as an element of malicious prosecution, is proved by showing that the prosecutor was actuated by improper motives." *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 270 (Ill. App. Ct. 2002). An improper motive for a prosecution is any reason other than to bring the party to justice. *Mack v. First Sec. Bank of Chi.*, 511 N.E.2d 714, 717 (Ill. App. Ct. 1987) (citing *Robinson v. Econ-O-Corp., Inc.*, 379 N.E.2d 923, 926 (Ill. App. Ct. 1978)). Moreover, "[a]lthough a lack of probable cause does not

itself establish malice, the trier of fact may infer malice from a lack of probable cause if there is no credible evidence which refutes that inference." *Id.* (internal citations omitted)

Here, Plaintiff alleges that Defendants intentionally or recklessly withheld and misstated information in order to obtain an arrest warrant for Plaintiff. (2nd Am. Compl. ¶ 68.) Specifically, Plaintiff alleges that Defendants failed to disclose the inconsistencies in Matthew's statements and the exculpatory statements of Sean. (*Id.*) Plaintiff further alleges that "Defendants Talmontas and Johnson knew or had reason to know that there was not probable cause to arrest Plaintiff Terry based on the facts known to them at the time they sought an arrest," and, therefore, "Plaintiff Terry was arrested and incarcerated on August 31, 2009 without probable cause." (*Id.* ¶¶ 70-71.) This does not demonstrate a "proper motive" on Defendants' part and, coupled with Plaintiff's allegations that probable cause was lacking, is sufficient to plead malice.

Defendants nevertheless argue that Plaintiff has not alleged that Defendants did not "truly believe that Plaintiff had battered a child." (Defs.' Mem. Supp. Mot. Dismiss 16.) As with the probable cause determination, however, what Defendants believed and whether their conduct was consistent with bringing "a party to justice" is a determination not properly resolved by the Court at the motion to dismiss stage. Therefore, Defendants' motion to dismiss Plaintiff's malicious prosecution claim is denied.

## V. Procedural Due Process Claim

Finally, Plaintiff asserts a procedural due process claim under the Fourteenth Amendment. (Pl.'s Resp. Br. 13.) Plaintiff alleges that his Fourteenth Amendment rights were violated "when he was arrested without probable cause and deprived of his liberty without due process of law." (*Id.*) Plaintiff contends that this claim is separate from his Fourth Amendment

claim because his "Fourth Amendment right was violated when he was arrested without probable cause and his Fourteenth Amendment right was violated when he was detained in violation of his liberty without due process of law [from his arrest on August 31, 2009] until he was arraigned and indicted on September 23, 2009." (*Id.*) The Court disagrees.

A victim of a liberty deprivation who has recourse to an adequate state remedy has not been denied "due process of law" and cannot assert a constitutional procedural due process claim. *Guenther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir. 1984). In *Guenther*, the plaintiff brought a Fourteenth Amendment procedural due process claim against a police officer and the city alleging that he was arrested without probable cause based upon the officer's factual misrepresentations and that he was deprived of his liberty without due process of law. *Id.* at 881. The Seventh Circuit affirmed summary judgment on the plaintiff's Fourteenth Amendment procedural due process claim because "there are Wisconsin tort remedies for matters which form the basis of Guenther's claim that he was deprived of liberty without due process of law. Specifically, claims for false arrest, false imprisonment, and malicious prosecution are all actionable in Wisconsin." *Id.* at 882.

Here, *Guenther* forecloses Plaintiff's Fourteenth Amendment claim because Plaintiff alleges that he was deprived of liberty without due process of law on the ground that he was arrested without probable cause based upon Defendants' misrepresentations, but Illinois provides adequate state law tort remedies such as false imprisonment, false arrest, and malicious prosecution. *See Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 132-32 (Ill. 1990) (stating the elements of false imprisonment, false arrest, and malicious prosecution in Illinois); *see also Hood v. City of Chi.*, 927 F.2d 312, 314 (7th Cir. 1991) ("*Guenther* appears therefore to foreclose [Plaintiff's] Fourteenth Amendment claim since he alleges that he was deprived of his

liberty without due process of law, yet Illinois provides adequate state tort law remedies such as false imprisonment or false arrest").

Moreover, Plaintiff's Fourteenth Amendment procedural due process claims are redundant. His allegations of procedural due process violations are identical to his allegations of Fourth Amendment violations, namely, that his rights were violated when he was arrested without probable cause and detained in violation of his liberty until he was arraigned and indicted on September 23, 2009. Plaintiff argues, however, that the difference between his Fourth and Fourteenth claims is one of timing. He claims his Fourth Amendment claims cover his arrest and his Fourteenth Amendment claims cover his post-arrest, pre-indictment detention.

In fact, Plaintiff's false arrest and false imprisonment claims under the Fourth Amendment and his malicious prosecution claim under Illinois law cover the entire period during which he allegedly suffered damages. The Fourth Amendment claims cover the period from the allegedly unlawful arrest up until issuance of process. *See Wallace*, 549 U.S. at 389-90; *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). The malicious prosecution claim covers the period of allegedly unlawful detention thereafter. *See Wallace*, 549 U.S. at 390. Regardless of whether issuance of process occurred at his arrest, as Defendants contend, (Defs.' Reply 11-12), or at his indictment, as Plaintiff suggests, (Pl.'s Resp. Br. 13), Plaintiff's Fourteenth Amendment procedural due process claims are subsumed by his other claims and should be dismissed. *See e.g.*, *Zabresky v. Von Schmeling*, 2013 WL 315718, at * (M.D. Pa. Jan. 28, 2013) (dismissing plaintiff's Fourteenth Amendment procedural due process claim because "the plaintiff's claims are clearly premised on alleged Fourth Amendment violations . . . [and] as the gravamen of his lawsuit is so clearly premised on a First and/or Fourth Amendment violation based upon his alleged malicious prosecution and arrest without probable cause, the Court will dismiss the

procedural due process claim") (citing *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 792–93 (3d Cir. 2000)); *Swedron v. Borough,* 2008 WL 5051399, at \*6 (W.D. Pa. Nov. 21, 2008) (same); *Wilson v. City of Cherry Hill*, 2011 WL 3651274, at \*8 n.12 (D. N.J. 2011) ("[C]ourts dismiss both substantive and procedural due process claims when "the gravamen of [the plaintiff's] lawsuit is so clearly premised on a . . . Fourth Amendment violation.").

Of course, to the extent Plaintiff relies on the Fourteenth Amendment to incorporate the Fourth Amendment and apply the Fourth Amendment to the actions of Defendants Talmontas and Johnson as state actors, he is permitted to do so. *See*, *e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding the rights guaranteed by the Fourth Amendment are enforceable against states via the Fourteenth Amendment). But any independent procedural due process claims Plaintiff alleges under the Fourteenth Amendment are hereby dismissed. [2]

## <u>Conclusion</u>

For the reasons herein, the Court grants in part and denies in part Defendants' motion to dismiss [54]. Defendants' motion to dismiss Plaintiff's Fourth Amendment and malicious prosecution claims is denied. Defendants' motion to dismiss Plaintiff's Fourteenth Amendment procedural due process claim is granted.

**SO ORDERED**                         **ENTER: 2/26/13**

**JOHN Z. LEE**
**U.S. District Judge**

---

[2] Because Plaintiff's claims are barred for the reasons discussed, the Court does not address Defendants' argument that Plaintiff's procedural due process claims are time-barred.