# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOOKER T. TERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 CV 6083 |
| ) | |
| STEVEN TALMONTAS, and ) | Judge John Z. Lee |
| KEVIN JOHNSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Booker T. Terry ("Terry") sued Steven Talmontas, a sergeant with the Will County Sheriff's Office, and Kevin Johnson, a police investigator with the Frankfort Police Department (collectively "Defendants"), alleging that Defendants omitted and misstated material facts in obtaining an arrest warrant against him for the alleged battery of a foster child. The arrest warrant was issued, and Terry was arrested, indicted, and held in prison awaiting trial before the State's Attorney dropped the charges, concluding there was inadequate evidence to support them.

Terry brought claims under 42 U.S.C. § 1983 for false arrest and procedural due process violations and under Illinois law for malicious prosecution. The Court granted Defendants' motion to dismiss Terry's procedural due process claim but allowed the other two claims to proceed. Defendants now separately move for summary judgment on Terry's remaining Section 1983 false arrest and state law malicious prosecution claims, arguing that his claims are time-barred, probable cause existed for both his arrest and prosecution, and Defendants are entitled to qualified immunity. For the reasons stated herein, the Court grants Defendants' motions for summary judgment on Terry's Section 1983 false arrest claim because it is time-barred. The

Court declines to exercise supplemental jurisdiction over the remaining state law malicious prosecution claim.

**Factual Background**

On August 13, 2009, Plaintiff was at the house of his then estranged wife, Sherri Terry ("Sherri"), in Beecher, Illinois. (Pl.'s LR 56.1(b)(3)(C) ¶ 1.) Sherri was a foster parent to three children – Matrianna, Matthew, and Sean. (*Id.*)

When Plaintiff arrived to Sherri's house, Sherri was away at work while Sherri's mother and a certified nursing assistant, Sylvester Young ("Young"), were present. (*Id.* ¶ 2.) In the early morning hours of August 14, Sherri returned home from work and found Matrianna lying unresponsive in her bed, and Matrianna appeared to be having a seizure. (*Id.* ¶ 3.) After 911 was called, the paramedics arrived and found Matrianna in her bed, unresponsive, but with no visible injuries except for blood around her mouth. (*Id.* ¶¶ 3-4.)

Later, Matrianna was transferred to Hope Children's Hospital in Oak Lawn, Illinois where she was examined by doctors and was found to have suffered a subdural hematoma (serious bleeding in the brain). (*Id.* ¶ 5.) Medical personnel noted she had some bruises on her buttocks and back. (*Id.*) Matrianna then underwent surgery for the subdural hematoma. (*Id.* ¶ 6.)

That evening, the Will County Sherriff's Office Major Crimes Task Force was enlisted to assist the Beecher and Frankfort police departments investigate the cause of Matrianna's head injuries. (*Id.* ¶ 9.) Defendant Kevin Johnson ("Johnson"), a police investigator with the Frankfort Police Department, and Defendant Steven Talmontas ("Talmontas"), a sergeant with the Will County Sheriff's Department, were called in to assist in the investigation. (*Id.* ¶¶ 11-12.)

The next day, Corporal Jeff Dopke ("Dopke") conducted a telephone interview of Dr. Christian DenOuden, one of Matrianna's treating physicians. (Defs.' LR 56.1(a)(3) ¶ 8.) Dr. DenOuden believed Matrianna suffered blunt force trauma to the head that likely caused the subdural hematoma. (*Id*. ¶ 9.)

On August 17, 2009, Defendant Johnson interviewed Young, who initially claimed that on August 14, 2009, he heard a thump and saw a black man entering Matrianna's bedroom. (Pl.'s LR 56.1(b)(3)(C) ¶ 17.) Upon further questioning by Defendant Johnson, however, Young recanted his original story and admitted he had lied. (*Id*. ¶ 18.) He then claimed that he had actually left Sherri's house around 11:00 p.m. on the evening of August 13, and that Plaintiff was the only adult in the house when he left. (*Id*.)

Also on August 17, 2009, Defendant Talmontas and Corporal Dopke assisted with interviews of Sherri's foster children Matthew and Sean. (*Id*. ¶ 21.) The interviews were led by a children's counselor and were videotaped. (*Id*.) The first interview with Matthew was not recorded due to technical difficulties. (*Id*.) In the second interview, Matthew claimed Plaintiff hit Matrianna a few days earlier downstairs, and then changed his account to state that Plaintiff hit Matrianna upstairs. (*Id*. ¶ 22.) In contrast, Sean denied that any of the foster children were subjected to physical abuse. (*Id*. ¶ 23.)

The next day, on August 18, 2009, Defendants Talmontas and Johnson met with Assistant State's Attorney Ken Chudwin ("Chudwin") to discuss the Terry investigation. (*Id*. ¶ 24.) Chudwin accompanied Defendants to Will County Court to obtain an arrest warrant for Plaintiff. (*Id*. ¶ 26.) That same day, Judge Daniel Rozak granted the arrest warrant, and on August 31, 2009, Plaintiff was arrested pursuant to the warrant. (*Id*. ¶¶ 26-27.) At the time of

his arrest, Plaintiff understood that police reports pertaining to his aggravated battery charge existed and contends that there was no basis for the charge. (Defs.' LR 56.1(a)(3) ¶ 46.)

The following month, on September 23, 2009, a grand jury was convened in Will County, and Corporal Dopke was the only witness. (Pl.'s LR 56.1(b)(3)(C) ¶ 28.) The grand jury indicted Plaintiff on September 24, 2009. (*Id*. ¶ 32.) Between September 1 and September 29, 2009, Terry saw the criminal complaint against him, and he understood that Detective Johnson had charged him with aggravated battery to a child. (Defs.' LR 56.1(a)(3) ¶ 49.)

While Terry was in prison, attorney James McCarron ("McCarron") filed an appearance on his behalf on September 29, 2009. (*Id*. ¶ 50.) Terry claims that he requested to see the police reports from McCarron several times, but he was not given access to the reports. (Pl.'s LR 56.1(b)(3)(C) ¶ 33.) About seven months later, McCarron was replaced by John Collins ("Collins") on April 28, 2010. (Defs.' LR 56.1(a)(3) ¶ 51.) After Collins became Terry's counsel, Terry reviewed the police reports in the case and understood the allegations against him. (*Id*.)[1] Prior to his release from prison, Terry also understood that the police reports listed the police officers involved with his arrest and the filing of his criminal charge. (*Id*.) In addition to providing Terry the police reports, Collins made a second motion for discovery on November 23, 2010, in his criminal case. (Pl.'s LR 56.1(b)(3)(C) ¶ 33.)

On June 6, 2011, the State's Attorney moved to *nolle prosequi* the charges against Terry, and he was released from prison. (*Id*. ¶ 35.) At the time he was released from prison, Terry

---

[1] Plaintiff objects to Defendants' Local Rule ("LR") 56.1(a)(3) ¶ 51 because "as of November 23, 2010, Mr. Collins still had not received police reports or Plaintiff's police file from the State's Attorney." (Pls.' Resp. Def. Johnson's LR 56.1 Statement 26.) Plaintiff cites to a motion for discovery to support his contention that Collins had not received police reports. (Ex. 21 to Pl.'s Opp'n Defs.' Mot. Summ. J.) The discovery motion does not specifically request police reports. (*Id*.) Furthermore, in his deposition, Terry admits to viewing the police reports while he was still in prison and understating the allegations against him. (Terry Dep. 51:4-55:4, Ex. E to Def. Johnson's Mot. Summ. J.) Thus, Defendants' LR 56.1(a)(3) ¶ 51 will be deemed admitted.

understood that Collins had his criminal case file, but he never requested any paper work from his file. (Defs.' LR 56.1(a)(3) ¶ 53.) After his release from prison, on or around August 17, 2011, Terry conferred with different attorneys regarding filing a civil lawsuit. (*Id*. ¶ 57.) On August 31, 2011, Terry filed a complaint against the Beecher Police Department and the Will County Task Force and Detention Center. (*Id*.) At the time Terry filed suit, nothing prevented him from including Defendants Talmontas and Johnson in his Complaint. (*Id*.)

On April 5, 2012, Terry filed an amended complaint naming Defendants Talmontas and Johnson and dismissing the Beecher Police Department and Will County Task Force and Detention Center. (Doc. 25.) On June 22, 2012, Terry filed a second amended complaint adding a malicious prosecution claim. (Doc. 53.)

## Discussion

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate for cases in which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *Id.* at 321-22.

### I. Statute of Limitations

Defendants argue that Plaintiff's Section 1983 claim for false arrest is barred by the statute of limitations. In response, Plaintiff contends that his false arrest claim is timely because the limitations period accrued only when he discovered his injury.

5

The statute of limitations in Section 1983 cases is governed by the state law limitations period in personal injury actions. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). In Illinois, the statute of limitations for personal injury actions is two years under 735 Illinois Compiled Statute § 5/13-202. *Id.* at 773; *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998). Although state law determines the length of the statute of limitations period, federal law governs the date the statute of limitations period begins to run. *See Kelly*, 4 F.3d at 511. In *Wallace v. City of Chicago*, the Seventh Circuit reaffirmed that the statute of limitations in a Section 1983 claim for false arrest accrues on the day of arrest. 440 F.3d 421, 427 (7th Cir. 2006). The following year, the Supreme Court held in *Wallace v. Kato* that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." 549 U.S. at 397. After *Wallace v. Kato*, the Seventh Circuit has continued to hold that in a Section 1983 claim for false arrest, the statute of limitations accrues upon the plaintiff's arrest. *See e.g.*, *Brooks v. City of Chi.*, 564 F.3d 830, 832 (7th Cir. 2009).

Thus, the statute of limitations for Terry's Section 1983 false arrest claim accrued on the date of his arrest. Here, Terry was arrested on August 31, 2009. (Pl.'s LR 56.1(b)(3)(C) ¶ 27.) On August 31, 2011, two years after his arrest and on the last possible day he could timely file suit for false arrest, Plaintiff filed a complaint against the Beecher Police Department and the Will County Task Force and Detention Center. (Defs.' LR 56.1(a)(3) ¶ 57.) On April 5, 2012, over seven months after the statute of limitations had run, Terry filed an amended complaint substituting Defendants Johnson and Talmontas for the Beecher Police Department and the Will County Task Force and Detention Center. (Doc. 25.) Because Terry filed his complaint against

Defendants Johnson and Talmontas more than two years after his arrest, his Section 1983 false arrest claim is barred by the statute of limitations.

Plaintiff argues that under the discovery rule, the limitations period accrued only when he discovered his injury, which he alleges was after November 23, 2010. (Pl.'s Opp'n Defs.' Mot. Summ. J. 6.) The controlling Supreme Court and Seventh Circuit precedent is clear that a Section 1983 false arrest claim accrues at the time of the arrest, not at a point in time when Terry purportedly discovered the nature of his injury. Plaintiff, however, cites two cases from this district to support his contention that the discovery rule may apply to delay the accrual of a Section 1983 false arrest claim. *See Booker v. City of Chi.,* No. 11 C 732, 2011 WL 6152290 (N.D. Ill. Dec. 6, 2011); *Johnson v. Garza*, 564 F. Supp. 2d 845 (N.D. Ill. 2008).

The cases cited by Plaintiff are not controlling authority, and other courts in this district have found that a plaintiff's claim for false arrest accrues on the date of arrest. *See e.g.*, *Carr v. City of Chi. Police Dept.*, No. 09 C 1623, 2011 WL 3793416, at *3 (N.D. Ill. Aug. 22, 2011) (citing *Wallace v. Kato* for the proposition that a Section 1983 claim for "false arrest accrued at the time of the arrest"); *Thomas v. City of Chi.*, No. 07-cv-4969, 2009 WL 1444439, at *3 (N.D. Ill. May 21, 2009) (holding that *Wallace v. Kato* "creates a clear rule governing the accrual date of a false arrest claim"); *Johnson v. Guevara*, No. 05 C 1042, 2007 WL 2608525, at *2 (N.D. Ill. Sept. 5, 2007) (finding plaintiff's reliance on the discovery rule misplaced given the Supreme Court's holding in *Wallace v. Kato*). As Judge Grady astutely observed in *Guevara*, "[t]his makes perfect sense because . . . '[i]n cases of false arrest, the plaintiff will be aware both of his injury, *i.e.*, the wrongful arrest, and those responsible for that injury, *i.e.*, the police, at the time of arrest, therefore no delay in the accrual of the cause of action is necessary.'" 2007 WL 2608525, at *2 (quoting *Rolax v. Whitman*, 175 F. Supp. 2d 720, 727 (D.N.J. 2001)). The Court

7

finds this reasoning persuasive and declines to follow *Booker*, 2011 WL 6152290, and *Johnson*, 564 F. Supp. 2d 845.[2]

Even if the discovery rule were to apply however, Terry's Section 1983 false arrest claim would still be time-barred. The federal common law discovery rule postpones the accrual date of a claim to a point in time when the plaintiff's injury "is discovered or should have been discovered." *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). It is undisputed that at the time of his arrest, Terry knew that there was no basis for his arrest and the charge of aggravated battery. (Defs.' LR 56.1(a)(3) ¶ 46.) Thus, Terry knew that he had been injured at the time of his arrest, and the discovery rule does not postpone the accrual date for his false arrest claim. *See Thomas*, 2009 WL 1444439, at *3 (noting "the discovery rule itself teaches that Plaintiff's cause of action accrued no later than the date that he was held pursuant to legal process . . . [because] a person who gets arrested has 'knowledge which would lead a reasonable person to investigate the possibility that [his] legal rights had been infringed.'") (quoting *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992-93 (7th Cir. 2002)).

Additionally, under the discovery rule Terry "has the burden of showing that [he] falls within the exception by demonstrating that even with the exercise of reasonable diligence [he] could not have known of [his] purported injury." *Cathedral of Joy Baptist Church v. Vill. of*

---

[2] Additionally, the decisions cited by Plaintiff were issued at the motion to dismiss stage. In determining whether a complaint survives a motion to dismiss, a plaintiff "need not anticipate and attempt to plead around defenses[,]" such as the statute of limitations. *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). In contrast, when a defendant raises the affirmative defense of the statute of limitations in a motion for summary judgment, "the burden is on the plaintiff to prove that the claim has been filed within the limitations period." *Weger v. Shell Oil Co.*, 966 F.2d 216, 218 (7th Cir. 1992) (internal citation omitted). Thus, in the cases cited by Plaintiff, the courts did not employ the discovery rule to find that the respective plaintiffs in fact had timely filed their claims. Instead, the courts cited the discovery rule as a basis to hold that the plaintiffs had not necessarily pleaded themselves out of court at the pleading stage by asserting in their complaints all of the necessary elements to establish defendants' statute of limitations defense.

*Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994) (internal citations omitted). The undisputed facts demonstrate that Terry has failed to meet his burden.

At the time of his arrest, Terry knew that police reports related to his aggravated battery charge existed and that there was no basis for his arrest. (Defs.' LR 56.1(a)(3) ¶ 57.) Terry also saw the criminal complaint against him and understood that Defendant Johnson had charged him with aggravated battery at least twenty-three months before the statute of limitations had run. (*Id.* ¶ 49.) In addition to the criminal complaint, Terry reviewed the police reports in the case while in prison and understood the police reports listed the officers involved with his arrest and filing of the criminal charges. (*Id.* ¶ 51.) After his release from prison, Terry made no attempt to request any paper work from his attorney even though Terry knew that his attorney had his criminal case file. (*Id.* ¶ 53.) Despite knowing that he was wrongfully arrested and having numerous opportunities to inquire into the wrongful nature of his arrest to gather more information, Terry sat on his hands.

Terry's argument that he "had no reason to believe that Defendants withheld material information to procure his arrest warrant[,]" and he "was still trying to get information from the State's Attorney as of November 23, 2010" is unpersuasive. (Pl.'s Opp'n Defs.' Mot. Summ. J. 6.) Indeed, Terry fails to demonstrate how any of the documents he requested and eventually received as a result of the November 23, 2010, discovery motion allowed him to uncover the nature of his injury. With the exercise of reasonable diligence, Terry could have discovered his purported injury within the two-year statute of limitations. Instead, Terry failed to investigate the cause of his false arrest and waited until the last possible day to file suit against the wrong defendants. Accordingly, the discovery rule does not save Terry's Section 1983 false arrest

claim. For these reasons, Plaintiff's claim against Defendants Johnson and Talmontas is barred by the two-year statute of limitations.

## II. Equitable Tolling

In the alternative, Plaintiff argues that the statute of limitations should be equitably tolled. In order for a court to equitably toll a statute of limitations, "[e]xtraordinary circumstances far beyond the litigant's control must have prevented timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Because Section 1983 claims are governed by the statute of limitations from state law, equitable tolling doctrines likewise are governed by state law. *See Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001) ("the state, rather than the federal, doctrine of equitable tolling governs cases of borrowing"). Under Illinois law, equitable tolling may be invoked to suspend the running of the statute of limitations when (1) a defendant has actively misled the plaintiff; (2) extraordinary circumstances have prevented the plaintiff from asserting his rights; or (3) the plaintiff timely but mistakenly asserted his rights in the wrong forum. *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000).

"On a motion for summary judgment, the burden is on the plaintiff to present facts which, if true, would justify equitable tolling of the statute of limitations." *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir. 1990). Plaintiff has failed to meet his burden. In his response brief, Plaintiff does not argue that Defendants actively misled him or that he mistakenly asserted his rights in the wrong forum. Instead, Plaintiff states that that an extraordinary circumstance prevented him from asserting his rights, which includes "an irredeemable lack of information." (Pl.'s Opp'n Defs.' Mot. Summ. J. 6) (citing *Thede v. Kapsas*, 897 N.E.2d 345, 351 (Ill. App. Ct. 2008).) In this regard, Plaintiff claims:

> Plaintiff, through his criminal counsel, sought the police and investigative files that contained the information he needed to show that his arrest and

10

prosecution were wrongful. However, despite such requests, his criminal attorney was still asking the State's Attorney to turn over the information as of November 23, 2010. This inequity is precisely what the doctrine of equitable tolling seeks to redress[.]

(*Id*. 7.) (citing *Thomas*, 2009 WL 1444439; *Ollins v. O'Brien*, No. 03 C 5795, 03 C 7175, 2006 WL 1519286 (N.D. Ill. May 26, 2006); and *Bell v. Woleck*, No. 00 C 946, 2002 WL 10473 (N.D. Ill. Jan. 2, 2002).)[3]

Plaintiff's vague contention that he sought certain investigative files and did not receive the files until later does not demonstrate an extraordinary circumstance which prevented him from asserting his rights. In fact, it is undisputed that on the day of his arrest, Plaintiff knew that there was no basis for the allegations that he battered a foster child. (Defs.' LR 56.1(a)(3) ¶ 46.) Thus, Plaintiff had two years to investigate the allegedly false battery accusations and pursue his false arrest claims. Instead, Plaintiff sat on his false arrest claim and waited until the last possible day to timely file suit against the Beecher Police Department and the Will County Task Force and Detention Center.

Furthermore, it is undisputed that Plaintiff had an opportunity to review the police reports in the case, and he understood the allegations against him months before the statute of limitations had expired. (*Id*. ¶ 51.) After being released from prison, Plaintiff knew that his attorney had his criminal case file, yet he never requested any paper work from his file. (*Id*. ¶ 53.) Finally, Plaintiff admits that nothing prevented him from including Defendants Talmontas and Johnson in his original August 31, 2011, Complaint. (*Id*. ¶ 57.) Plaintiff has failed to meet his burden of

---

[3] In *Thomas* and *Ollins*, the courts allowed the plaintiffs to proceed beyond the motion to dismiss stage because the statutes of limitation *could* have been equitably tolled. *Thomas*, 2009 WL 1444439; *Ollins v. O'Brien*, 2006 WL 1519286. In *Bell v. Woleck*, the court provided the parties an opportunity to brief whether equitable tolling applied because of (1) a change in the law; (2) new recently-discovered evidence; and (3) the court's earlier *sua sponte* dismissal. 2002 WL 10473, at *3. All three cases cited by Plaintiff are readily distinguishable from the facts at hand and do not support Plaintiff's contention that equitable tolling is warranted here.

demonstrating that an extraordinary circumstance prevented him from asserting his rights, and thus the Court will not equitably toll the statute of limitations.

### III. Malicious Prosecution Claim

Because the Court grants Defendants' motion for summary judgment based on the statute of limitations for Plaintiff's Section 1983 false arrest claim, the Court is left with Plaintiff's state law malicious prosecution claim. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a supplemental state law claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Once no federal claims remain, it is the norm for a district court to relinquish pendant jurisdiction of remaining state law claims. *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law malicious prosecution claim. This claim is dismissed without prejudice.

## Conclusion

For the reasons stated herein, the Court grants Defendants' motions for summary judgment based on the statute of limitations for Plaintiff's Section 1983 false arrest claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law malicious prosecution claim, and this claim is dismissed without prejudice. Civil case terminated.

**SO ORDERED**          **ENTER: 3/21/14**

_____
**JOHN Z. LEE**
**United States District Judge**